# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDHAT KAMEL, | CIVIL ACTION NO. 3:CV-14-1658 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| SANOFI PASTEUR, | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is Defendant Sanofi Pasteur's partial Motion to Dismiss (Doc. 20) Plaintiff Medhat Kamel's Amended Complaint (Doc. 19) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff alleges the following claims under Title VII of the Civil Rights Act of 1964: national origin discrimination (Count I), national origin discrimination-hostile work environment (Count II), religious discrimination (Count III), religious discrimination-hostile work environment (Count IV) and retaliation (Count V). He also alleges discrimination on the basis of national origin (Count VI) and religion (Count VII), as well as retaliation (Count VIII), in violation of the Pennsylvania Human Relations Act. Defendant moves to dismiss Counts I, II and VI (all national origin-related claims) and strike paragraphs 35-53 and 72-79 of Plaintiff's amended complaint because Plaintiff failed to exhaust administrative remedies and to timely assert some of these claims. Because Plaintiff's national origin discrimination claims could reasonably have been expected to grow out of the administrative investigation of his religious discrimination claims, and because events that took place outside of the statute of limitations were part of a continuous violation, Defendant's Motion to Dismiss (Doc. 20) will be *denied*. Because motions to strike are generally disfavored and Defendant has not sufficiently shown the potential for prejudice or confusion, the motion to strike will be *denied*.

## I. Background

**A. Factual Background**

**1. Discrimination and Hostile Work Environment**

This action arises out of events that occurred while Plaintiff Medhat Kamel was employed by Defendant Sanofi Pasteur. The relevant facts, as stated in the Amended Complaint (Doc. 19), are as follows:

Plaintiff Kamel is a practicing Muslim. (*Id.,* ¶ 2.) His national origin is Egyptian. (*Id.,* ¶ 3.) Defendant is a company that employed Plaintiff in Swiftwater, Pennsylvania. (*Id.,* ¶¶ 4-5.) Defendant is governed by Title VII of the Civil Rights Act, as it engages in an industry affecting interstate commerce and maintained the requisite number of employees. (*Id.,* ¶ 6.)

In or around May 2009, Defendant hired Plaintiff as a temporary contractor at its Swiftwater facility. (*Id.,* ¶ 33.) On or about April 3, 2010, Defendant hired Plaintiff as a Third-Shift Filling and Packing Technician II. (*Id.,* ¶ 34.) Plaintiff alleges that Defendant's agents, servants, and employees, acting within their job responsibilities, engaged in the pattern and practice of discriminatory and retaliatory treatment against Plaintiff. (*Id.,* ¶¶ 7-8.)

In 2011, Plaintiff's coworker Regis Flaherty drew a camel with Plaintiff's name on it in the break room. (*Id.,* ¶ 35.) The picture was visible to anyone who entered the room. (*Id.,* ¶¶ 35-6.) Plaintiff complained about the drawing to Dan Kimmel, Deputy Director of Human Resources, but Mr. Flaherty was not disciplined. (*Id.,* ¶¶ 37-8.) Mr. Flaherty also drew pictures of the Egyptian flag next to the Israeli flag. (*Id.,* ¶ 39.) Mr. Flaherty taunted Plaintiff, and asked him if the images bothered him. (*Id.,* ¶ 40.) Plaintiff again complained to Dan Kimmel, and Mr. Flaherty was not disciplined. (*Id.,* ¶¶ 40-41.)

Plaintiff alleges that in or around Fall 2012, his coworker Alex Zabosky asked Plaintiff if he studied chemistry, physics and math so that he could "blow up" the United States one day. (*Id.,* ¶ 43.) Plaintiff reported Mr. Zabosky to his shift manager, Pam Johnson. (*Id.,* ¶ 44.) Plaintiff believes that Defendant did not investigate his complaint, and did not discipline Mr. Zabrosky for his remarks. (*Id.,* ¶¶ 45-46.) Defendant asserts that this did not occur in or around Fall 2012, because Ms. Johnson ended her employment at the company in 2010,

and attached her Termination Data form to a Declaration submitted with their Motion to Dismiss. (Doc. 23, *Ex. H.*)

Around the end of 2012 and the beginning of 2013, Plaintiff's coworker Mr. Zabosky told him that only stupid people do not believe in or accept Jesus as God. (*Id.,* ¶ 48.) Mr. Zabosky knew that Plaintiff was a practicing Muslim. (*Id.,* ¶ 49.) Plaintiff reported this incident to his supervisor, Ms. Johnson, but Mr. Zabosky was not disciplined. (*Id.,* ¶¶ 50-51.) Rather, the company transferred Mr. Zabosky to First Shift from Third Shift, which was considered a reward. (*Id.,* ¶¶ 52-53.)

Throughout the end of 2012 and the beginning of 2013, Plaintiff's coworkers referred to him as a "terrorist" and told him that he should return to Egypt. (*Id.,* ¶ 47.)

After Plaintiff began working at Sanofi Pasteur, he informed his coworkers and his managers, Paul Mamzic and Nicole Bevacqua, that he did not eat pork for religious reasons. (*Id.*, ¶¶ 54-55.) At various times throughout 2012, Mr. Mamzic told Plaintiff he would put pork on all food ordered by Sanofi Pasteur for its employees. (*Id.,* ¶ 56.) One time, Ms. Bevacqua brought food with pork on it to an office meeting, and told Plaintiff to eat it. (*Id.,* ¶ 57.) Plaintiff's coworkers repeatedly told him he was "crazy" for not eating pork, and that he did not know what he was missing. (*Id.,* ¶¶ 59-60.)

In June or July of 2012, Plaintiff requested to take off the first day of Ramadan for religious observance. (*Id.,* ¶ 61.) From 2009 through 2011, Defendant had allowed this, however, in 2012, Ms. Bevacqua refused to change the schedule. (*Id.,* ¶¶ 62-64.)

In or around mid-January 2013, Plaintiff's coworker Julie Bershore told other employees that Plaintiff's home country, Egypt, and his religion, Muslim, allowed him to practice polygamy. (*Id.,* ¶ 65.) When Plaintiff attempted to correct her by telling her that Muslims and Egyptians do not practice polygamy, Ms. Bershore laughed and continued to repeat this to Plaintiff's coworkers. (*Id.*, ¶¶ 66-67.)

In or around February 2013, another coworker referred to Plaintiff's religious beliefs and practices as "crazy". (*Id.,* ¶ 70.) In April 2013, after a terrorist attack in Boston, two of Plaintiff's American coworkers, Edward Little and Thomas Nye, posted pictures and articles

3

on their Facebook pages that were offensive to Plaintiff. (*Id.*, ¶ 72.) On April 19, each posted: "The Boston Bombers were not: Right Wingers, Tea Partiers, Republicans, NRA 'Gun Nuts,' Militia Men. They were Muslims! All Muslims are not terrorists. But most terrorists are Muslims." (*Id.*, ¶ 73.) On or around April 19, 2013, Mr. Nye wrote a series of posts on Facebook that Plaintiff considered offensive and threatening, including:

> All future visitors will be thoroughly checked and limited to 90 days unless given a special permit!!!! No one from a terrorist nation will be allowed in. If you don't like it there, change it yourself and don't hide here. Asylum would never be available to anyone. We don't need any more cab drivers or 7-11 cashiers. No foreign 'students' over the age of 21. The older ones are the bombers. . . . (*Id.*, ¶ 74.)

Plaintiff reported these comments to Defendant's Human Resources personnel, who told Plaintiff they could not do anything as they had no control over employees' social media posts. (*Id.*, ¶¶ 75, 78-79.) Plaintiff left two (2) voicemails about his coworkers' Facebook posts with Jeanette Fontanes-Quiles, who worked in Employee Relations, Human Resources at Sanofi Pasteur. (*Id.*, ¶ 76.) Ms. Fontanes-Quiles did not return Plaintiff's calls. (*Id.*, ¶ 77.)

**2. Retaliation**

On or about January 18, 2013, Plaintiff filed a written Complaint of Discrimination alleging religious discrimination against Defendant with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.*, ¶ 68; *Ex. A*.) This was assigned a case number, and also filed with the Equal Employment Opportunity Commission. (*Id.*, ¶ 69.)

On March 7, 2013, Plaintiff met with Jeanette Fontanes-Quiles, who worked for Sanofi Pasteur Human Resources, about the complaint of discrimination that he had filed that January. (*Id.*, ¶ 80.) She told Plaintiff that she wanted to discuss his allegations against Alex Zabosky, and asked for witness names. (*Id.*, ¶ 81-82.)

On June 24, 2013, Defendant terminated Plaintiff, approximately two (2) months after he filed a second administrative complaint of discrimination. (*Id.*, ¶¶ 83-84.) Defendant's stated reason for termination was that Plaintiff exhausted his leave under the company's short-term disability policy. (*Id.*, ¶ 85.) Plaintiff alleges that this was a pretext as Defendant did not terminate others who did not make complaints of discrimination. (*Id.*, ¶ 87.)

**B. Procedural Background**

**1. Administrative Remedies**

Plaintiff asserts that he exhausted his administrative remedies as required by Title VII and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 19, ¶ 16.) On or about January 18, 2013, Plaintiff filed a written Complaint of Discrimination ("January Complaint") with the Pennsylvania Human Relations Commission ("PHRC"), attached to the complaint as Exhibit A. (*Id.,* ¶ 17; *Ex. A*.) The administrative charge was assigned a PHRC case number, and also filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id.,* ¶ 18.) The PHRC began an investigation of Plaintiff's allegations. (*Id.,* ¶ 19.)

Plaintiff attaches to his complaint as Exhibit B a copy of an email he sent to the PHRC investigator assigned to his case on September 16, 2013, as an example of the exchanges that occurred during the investigation. (*Id.,* ¶ 20; *Ex. B*.) In this email, he wrote, in part:

> . . . on a nightly basis I am subject to being in a hostile work environment; not only by other employees, but by some members of management. I have received direct, offensive comments from coworkers regarding my race, my religion and my origin. I have been subject to offensive pictures from coworkers caling me a terrorist, and comments saying that I should go back to Egypt, despite the fact that I am an American citizen. This hostile work environment has sincerely affected me negatively mentally, emotionally, and physically. (*Id.*)

On or about June 26, 2013, Plaintiff completed a PHRC employment discrimination questionnaire in order to file a second complaint of discrimination, attached to his complaint as Exhibit C. (*Id.,* ¶ 21; *Ex. C*.) On or about August 27, 2013, Plaintiff filed a second written Complaint of Discrimination ("August Complaint") with the PHRC alleging religious, race, and national origin discrimination and retaliation against Defendant, attached as Exhibit D. (*Id.,* ¶ 22; *Ex. D*.) This Complaint was assigned a PHRC case number and filed with the EEOC. (*Id.,* ¶ 23.) Again, the PHRC commenced an investigation. (*Id.,* ¶ 24.)

On or about May 27, 2014, the EEOC issued a Dismissal and Notice of Rights for the January Complaint, attached as Exhibit E. (*Id.,* ¶ 26; *Ex. E*.) On or about September 25, 2014, the PHRC issued Plaintiff a Notice of Rights of Complainants After Dismissal of Complaint, attached to the Complaint as Exhibit F. (*Id.,* ¶ 27; *Ex. F*.) On or about December

3, 2014, the EEOC issued a Dismissal and Notice of Rights for the August Complaint, attached as Exhibit G. (*Id.,* ¶ 27; *Ex. G*.) Plaintiff then notified the EEOC of his intent to proceed with a lawsuit in federal court, and initiated this instant action. (*Id.,* ¶¶ 28-29.) Plaintiff asserts that the EEOC notified Defendant of Plaintiff's intent to file suit, and attempted but failed to achieve a voluntary resolution of Plaintiff's claims, as required by Title VII. (*Id.,* ¶ 30.) Thus, Plaintiff maintains that he has exhausted his administrative remedies.

### 2. This Action

On August 25, 2014, Plaintiff Medhat Kamel initiated this action by filing a complaint in this court (Doc. 1), which was later amended (Doc. 19). On November 24, 2014, Defendant Sanofi Pasteur filed an Answer (Doc. 11) to that complaint, and a partial Motion to Dismiss (Doc. 12), which was later terminated. On December 8, 2014, Plaintiff filed an Amended Complaint (Doc. 19). Plaintiff alleges the following claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*: national origin discrimination (Count I), national origin discrimination-hostile work environment (Count II), religious discrimination (Count III), religious discrimination-hostile work environment (Count IV) and retaliation (Count V). He also alleges discrimination on the basis of national origin (Count VI) and religion (Count VII), as well as retaliation (Count VIII), in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*.

On December 22, in response to the Amended Complaint, Defendant filed a second Motion to Dismiss (Doc. 20), a Brief in Support (Doc. 21), a Declaration with attached exhibits (Docs. 22-24), and an Answer (Doc. 25). Defendant moves to dismiss Counts I, II and VI, which all involve national origin discrimination, and strike paragraphs 35-53 and 72-79 of the Amended Complaint (Doc. 19) 0because Plaintiff failed to exhaust administrative remedies and some of his claims are time-barred.

On January 19, 2015, Plaintiff filed a Brief in Opposition to the Motion to Dismiss (Doc. 28). On January 30, 2015, Defendant filed a Reply Brief (Doc. 29). This matter is fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. See *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable

7

expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

In deciding a motion to dismiss, the Court considers the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196.

### III. Discussion

Defendant moves to dismiss Plaintiff's Title VII and Pennsylvania Human Rights Act ("PHRA") national origin claims, Counts I, II and V, because the occurrences giving rise to these claims were not mentioned in Plaintiff's administrative complaints, and some of them occurred outside of the statute of limitations for such actions. Defendant also seeks to have stricken from Plaintiff's Amended Complaint (Doc. 19) the factual allegations not set forth in his administrative complaints (¶¶ 35-42, 72-79) and the factual allegations that Defendant asserts are time-barred (¶¶ 35-53). I will address each of these in turn.

**A. Failure to Exhaust Administrative Remedies**

Defendant moves to dismiss Plaintiff's Title VII and Pennsylvania Human Rights Act ("PHRA") national origin claims, Counts I, II and VI, in part for failure to exhaust administrative remedies. Defendant asserts that Plaintiff's claims relating to national origin discrimination in the Amended Complaint (Doc. 19) must be dismissed because national origin discrimination was not included in Plaintiff's administrative complaints. Defendant maintains that this constitutes a failure to exhaust administrative remedies, and as such, these allegations are not properly before this court.

Plaintiff agrees that both Title VII and the PHRA require a plaintiff to first exhaust administrative remedies before filing an action in court. (Doc. 28, 6-7.) Under 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1), a plaintiff may only bring suit in a Title VII action after the EEOC investigates the claim and issues a "right to sue" letter, as happened in this case. The PHRA has a similar requirement that an administrative complaint first be filed with the PHRC. 43 P.S. § 959(h). Courts "generally interpret the PHRA in accord with its federal counterparts" and often collapse the two analyses into one. *Jackson v. Planco*, 431 F. App'x 161, 164 n.2 (3d Cir. 2011) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996)). Thus, here I will combine the state and federal strands of analysis into one. *See, e.g., Baker v. United Def. Indus., Inc.*, 403 F. App'x 751, 754 (3d Cir. 2010).

After a plaintiff files an administrative claim and the agency issues a "right to sue" letter, "[t]he ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014) (citing *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996)). The Third Circuit Court of Appeals has held that "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)). The question at issue here is whether Plaintiff's national origin discrimination claims are within the scope of the investigation which could have reasonably been expected to grow out of Plaintiff's

administrative charges of discrimination.

Plaintiff filed administrative complaints in January and August 2013. Defendant asserts that claims of national origin discrimination were not included in these complaints, in particular, the incidents described in paragraphs 35-42 and 72-79 of the Amended Complaint (Doc. 19). Plaintiff argues that his national origin discrimination claims fall within the scope of the administrative charges, which included claims of discrimination on the basis of religion and disability, and a retaliation claim.

Taking all facts in the Complaint as true and resolving all inferences in his favor, Plaintiff has shown that the national origin discrimination claim is within the scope of the initial administrative complaints. Defendant argues that it "cannot be reasonably expected for national origin discrimination claims to grow out of . . . religious. . . discrimination claims, as national origin discrimination is not at all related to . . . religious discrimination." (Doc. 29, 5.) However, in this instance, it appears that the national origin and religious discrimination claims were very closely linked. In his first administrative complaint (Doc. 19-1, *Ex. A*), Plaintiff wrote as part of his discrimination claim that he was denied leave because he wished to take care of a family member in Egypt. Additionally, in his email correspondence with the EEOC investigator as part of the investigation, he listed further instances of discrimination he had experienced and the events that created the hostile work environment. (Doc. 19-1, *Ex B.*) In this email, he wrote about how "on a nightly basis" he received "direct, offensive comments from coworkers regarding my race, my religion and my origin. I have been subject to offensive pictures from coworkers calling me a terrorist, and comments saying that I should go back to Egypt." (*Id.*) In this instance, national origin discrimination did grow out of the religion claim, and in a way that could have been reasonably expected. Plaintiff also included in his exchange with the EEOC investigator copies of Facebook posts by co-workers in which they made remarks about Muslims being terrorists, and how foreigners and immigrants, especially those from "terrorist nations," should be banned from the United States. (*Id.*) These instances of discrimination on the basis of national origin are reasonably related to the instances of discrimination on the basis on religion.

10

Where a foreign-born Muslim employee is harassed and discriminated against as a "terrorist" at work, courts have found that if he files a Title VII action in court alleging national origin and religious discrimination, he has exhausted administrative remedies with respect to both kinds of discrimination, even if his administrative charge only specified one of the two. *See*, *e.g., Sasannejad v. Univ. of Rochester*, 329 F. Supp. 2d 385, 390 (W.D.N.Y. 2004) ("the line between discrimination based on Iranian national origin and the Islamic religion appears to be sufficiently blurred and the claims are reasonably related to one another"). In *Sasnnejad*, a Muslim-Iranian plaintiff was assumed to have administratively exhausted both his national origin and religious discrimination claims, though his EEOC charge of discrimination alleged only national origin discrimination. *Id.* As is alleged in this action, the harassment of the plaintiff in *Sasnnejad* was tied into his coworkers' perception of him and people of his religion and national origin as "terrorists" after the September 11, 2001 terrorist attack. *Sasnnejad,* 329 F. Supp. 2d 385.

Third Circuit Court of Appeals ("Third Circuit") jurisprudence also indicates that administrative remedies should be considered exhausted in this action. The Third Circuit has held that while "the 'preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion,' the aggrieved party 'is not permitted to bypass the administrative process.'" *Webb,* 562 F.3d at 262-63 (3d Cir. 2009), (quoting *Ostapowicz,* 541 F.2d at 398). The administrative exhaustion requirement is "designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." *Ostapowicz*, 541 F.2d at 398. In this action, by allowing Plaintiff's claims based on national origin discrimination to proceed beyond the motion to dismiss stage, these principles are best served. Conciliation was attempted, but did not succeed. Given the extent to which Plaintiff had reported these instances of discrimination to his superiors and human resources officers at the company, and how closely the claims are linked, "'the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely.'" *Morales v. PNC Bank, N.A.*, No. CIV.A. 10-1368, WL 3425644, at *4 (E.D. Pa. Aug. 4, 2011) (quoting *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999) (finding a plaintiff

had exhausted administrative remedies with respect to his national origin and racial employment discrimination claims, though he had only explicitly asserted a race claim in his administrative complaint)). Based on the foregoing, Plaintiff's complaint will not be dismissed in part because he failed to exhaust administrative remedies.

**B. Untimeliness**

Defendant asserts that Plaintiff cannot bring an action based on the events described in paragraphs 35-53 of the Amended Complaint (Doc. 19), because they were not timely asserted in Plaintiff's administrative filings. Thus, Plaintiff failed to exhaust his administrative remedies with respect to these claims.

Plaintiff filed two administrative complaints of discrimination in January and August 2013. Defendant moves to dismiss all allegations described in paragraphs 35 through 53 of the Complaint (Doc. 19). Plaintiff contends that these events are properly included as part of the claim under the "continuing violation" theory.

Under the "continuing violation" theory, a plaintiff may bring suit based in part on events that would otherwise be time-barred, so long as the plaintiff can "show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *West v. Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995) (both superceded in part by statute, *Lilly Ledbetter Fair Pay Act*, Pub. L. No. 111–2, 123 Stat. 5 (2009))). To constitute a continuing violation, the discriminatory acts must be part of a "persistent, ongoing pattern." *Mandel*, 706 F.3d at 167. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. There must be "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Obergantschnig v. Saw Creek Estates Cmty. Ass'n, Inc.*, No. 12-CV-5911, 2013 WL 5676328, at *4 (E.D. Pa. Oct. 18, 2013) *aff'd*, 573 F. App'x 213 (3d Cir. 2014).

12

Defendant contends that Plaintiff has failed to demonstrate that there was a continuing violation with respect to both prongs of the test set out by the Third Circuit in *Mandel*, 706 F.3d at 165-66: Plaintiff has not pled at least one timely act, and has not shown that all claims were part of the same unlawful practice.

In his complaint, Plaintiff does properly allege at least one act that falls within the required time frame. The parties dispute the timing of an incident in which a coworker asked the plaintiff if he studied science and math so that he could blow up the United States, and was not disciplined when Plaintiff reported the incident. (Doc. 19, ¶¶ 43-46.) This dispute stems from the fact that the manager he claims he reported it to, Pamela Johnson, ended her employment with Defendant in 2010. However, even putting aside that specific incident, Plaintiff's complaint describes incidents of national origin discrimination that fall within the statutory time frame: he alleges acts of discrimination through 2013, including an incident in January 2013 when his co-workers falsely discussed how Plaintiff's religion and home country practice polygamy, and laughed at him for it. (Doc. 19, ¶¶ 65-67.) Additionally, Plaintiff's complaint states that "[t]hroughout the end of 2012, beginning of 2013, Plaintiff's coworkers also referred to Plaintiff as a terrorist in the workplace and told him he should return to Egypt." (Doc. 19, ¶ 47.)

Next, there is the question of whether there was a "continuing violation." Taking all facts in the Complaint as true and resolving all inferences in his favor, did Plaintiff plead sufficient facts to show that these discriminatory acts constituted a "persistent, ongoing pattern," rather than "isolated or sporadic acts"? Plaintiff argues that there was. He also asserts that if there is a question as to whether there was an ongoing pattern and practice of discrimination, it is best assessed on a more developed record, and so is not properly dismissed on these grounds at this stage. I agree.

"In order to evaluate whether a continuing violation has occurred, the Third Circuit has enumerated two non-exhaustive factors to distinguish continuing violations from isolated occurrences: (1) the subject matter, or whether the acts constitute the same type of discrimination and (2) the frequency of the underlying acts." *Obergantschnig* at *4 (citing

13

*West*, 45 F.3d at 755).

With respect to whether the acts constitute the same type of discrimination, it appears from the face of the Complaint that they do.  All of the discrimination that Plaintiff alleges he faced stemmed from his coworkers and supervisors mocking him for reasons pertaining to the practices and customs of his foreign nation and different religion.  Plaintiff was denied leave for religious observance and to travel to Egypt to care for an ill family member, which Plaintiff contends was because of his religion and national origin.  Furthermore, much of the alleged discrimination was based on his coworkers' perception of Muslims and people from predominately Muslim countries as "terrorists," and general prejudice against foreigners.  Plaintiff asserts that though he repeatedly reported this discrimination, Defendant did not respond.

"With regard to frequency, the Third Circuit has noted that there is no 'specific standard for determining how close together the acts must occur to amount to a continuing violation.'" *Obergantschnig* at *4 (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 295 (3d Cir. 2001)).  "While a break of multiple years between incidents clearly negates the continuing nature of an alleged violation, breaks between half a year and one year long have been held insufficient to constitute an ongoing violation only when the Plaintiff's circumstances have also changed during that time period."  *Obergantschnig* at *5 (internal citations omitted).

Defendant specifically points to the events alleged in paragraphs 35 through 53 of the Complaint, described in further detail in section (I)(A) of this memorandum, as time-barred.  The Complaint contends that these events occured: "in 2011" (without specification), "in or around the fall of 2012," and  "throughout the end of 2012/beginning of 2013."  (Doc. 19, ¶¶ 35-53.)  The rest of the Complaint alleges instances of discrimination regularly throughout 2012 and 2013.  While there were some gaps in the discrimination, it appears to have been fairly ongoing throughout the course of Plaintiff's employment at Sanofi Pasteur.

Taken together and resolving all inferences in favor of the plaintiff, these facts paint a picture of a continuous violation, in the form of continued, sustained harassment and discrimination against Plaintiff Kamel on the basis of his national origin and religion,

culminating in his firing in June 2013. It also shows a pattern of Defendant Sanofi Pasteur not responding to Plaintiff's complaints about discrimination and harassment. The discrimination that Plaintiff faced was all on the basis on his national origin and religion. It centered on the associated practices and beliefs that set him apart from his co-workers. Plaintiff repeatedly reported these instances to the people responsible for preventing such harassment at Sanofi Pasteur, but his concerns were not addressed. While further development of the record may demonstrate that there was not a continuing violation, at this stage, plaintiff's national origin claims are not appropriately dismissed because they are time-barred. Based on the foregoing, Defendant's motion to dismiss (Doc. 20) will be denied.

**C. Motion to Strike**

Defendant seeks to strike paragraphs 35-42 and 72-79 of the Amended Complaint (Doc. 19) because the incidents described therein were not in Plaintiff's administrative complaint, and thus Plaintiff has not exhausted his administrative remedies. Defendant seeks to strike paragraphs 35-53 because Defendant alleges that the events described within are time-barred. Defendant seeks to dismiss Counts I, II and VI for similar reasons: lack of administrative exhaustion and untimeliness. With respect to administrative exhaustion, Plaintiff argues that the incidents described in paragraphs 35-42 and 72-79, which relate to national origin discrimination. fall within the scope of his administrative complaints. With respect to the issue of timeliness raised by paragraphs 35-53, Plaintiff argues that they are properly included in this action because they were part of ongoing discriminatory actions.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties. *See Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 133 (E.D. Pa. 2007). While a trial court has considerable discretion in whether to

15

grant or deny such a motion, they are "highly disfavored" and should only be granted "when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011) (quoting *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)).

This instant motion to strike will not be granted, as the facts that Defendant wishes to strike do not create the enough potential for prejudice or confusion to warrant striking them at this stage. Furthermore, the paragraphs that Defendant wishes to strike are very closely tied into the central legal issues in this action, and particularly the legal issues that Defendant seeks to have dismissed in the motion before me today. Not only does this demonstrate that these paragraphs are relevant, but more importantly, a disputed and substantial question of law in an action is not properly resolved through a Rule 12(f) motion. *Medevac MidAtlantic*, 817 F. Supp. 2d at 520. Thus, the motion to strike will be denied.

### IV. Conclusion

For the above reasons, Defendant's partial Motion to Dismiss and Motion to Strike (Doc. 20) will be *denied*. An appropriate order follows.

| | |
|---|---|
| March 4, 2015 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |